**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1782

GENE W. CROFT, JR., as Personal Representative
of the Estate of Gene W. Croft, Sr., Estate of
Gene W. Croft, Sr.,

                                    Plaintiff - Appellee,

          versus

OLD REPUBLIC INSURANCE COMPANY,

                                    Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.  Matthew J. Perry, Jr., Senior
District Judge.  (3:02-cv-03769-MJP)

Argued:  March 12, 2007            Decided:  May 16, 2007

Before WILKINSON, MICHAEL, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Clayton Monroe Custer, WOMBLE, CARLYLE, SANDRIDGE & RICE,
Greenville, South Carolina, for Appellant.  Richard Ara
Harpootlian, Columbia, South Carolina, for Appellee.  **ON BRIEF:**
William J. Watkins, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE,
Greenville, South Carolina, for Appellant.  Graham L. Newman,
RICHARD A. HARPOOTLIAN, P.A., Columbia, South Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The personal representative of the estate of Gene W. Croft, Sr. (the Croft Estate) brought this action to reform an insurance policy under South Carolina law due to the alleged failure of Old Republic Insurance Co. (ORIC) to make a meaningful offer of underinsured motorist coverage (UIM) to its insured, Penske Truck Leasing Corp. (Penske). Croft, a Penske employee, was killed when the Penske truck he was driving was negligently struck by a passenger car. The negligent driver was underinsured and the ORIC insurance policy covering the truck did not include UIM. Under South Carolina law an insurer's failure to make a meaningful offer of UIM requires reformation of the policy to provide UIM in an amount equal to the policy's liability limits. After receiving answers to several questions certified to the South Carolina Supreme Court, the district court concluded that ORIC failed to make a meaningful offer of UIM to Penske and granted the Croft Estate's motion for summary judgment. We affirm.

I.

Penske held a three-year automobile insurance policy with ORIC that took effect on January 1, 2000. The policy was a "fronting policy," under which the deductible equaled the limits of liability. Although the policy covered a three-year period, ORIC sent forms to Penske on an annual basis that allowed Penske to

2

select or reject uninsured and underinsured motorist coverage.  The annual submission of forms to Penske was meant to accommodate any intervening changes in state law and to ensure that appropriate endorsements were in place.

The South Carolina forms consisted of Form Number 2006 issued by the South Carolina Department of Insurance and a supplemental form created by ORIC containing additional information regarding available uninsured and underinsured motorist coverage options.  The forms state that the insured has "the right to buy underinsured motorist coverage in limits up to the limits of liability coverage which you will carry under your automobile insurance policy," J.A. 27, 35, 39, and the supplemental form provides a list of optional limits.  This list includes the option of limits equal to the $1 million liability limits of the policy.  The forms also state, however, that UIM "is available at Limit(s) up to the same Limit(s) selected for Uninsured Motorists [coverage.]" J.A. 29, 33, 42.  Each year, Penske chose the minimum uninsured motorist limits required by South Carolina law (i.e., $15,000/$30,000/$10,000) and rejected UIM.  Only the 2000-2001 and 2001-2002 forms were returned to ORIC in a timely fashion.

The Croft accident occurred in January 2002.  In October 2002 the Croft Estate filed this declaratory judgment action against ORIC in South Carolina state court, seeking to reform the Penske policy to include UIM coverage equal to the $1 million

3

liability limits of the policy. ORIC subsequently removed the case to federal court, and in December 2003 the court heard the parties' cross-motions for summary judgment on the issue of whether ORIC had made a meaningful offer of UIM to Penske, as required by South Carolina law. One of ORIC's arguments was that Penske's fronting policy was exempt from the meaningful offer requirement under a recent South Carolina statute dealing with exempt commercial policies. The lack of case law on the statute's interpretation prompted the district court to certify several questions to the South Carolina Supreme Court. The South Carolina court determined that Penske's fronting policy is an exempt commercial policy, but that such a policy was still subject to the meaningful offer requirement. Croft v. Old Republic Ins. Co., 618 S.E.2d 909, 913-14 (S.C. 2005). The state court held that the same requirement also applies to all fronting policies. Id. at 917. Moreover, the state court determined that the insured's sophistication and expressed desire not to purchase UIM do not relieve an insurer of its responsibility to make a meaningful offer. Id. at 918.

After receiving the state court's answers to the certified questions, the district court granted summary judgment to the Croft Estate, concluding that ORIC failed to fulfill the meaningful offer requirement because language in the ORIC forms effectively precludes a choice of UIM up to the liability limits when the insured opts for a lesser level of uninsured motorist

coverage. Specifically, the court determined that, according to the forms, Penske would not have been able to purchase UIM greater than the $15,000/$30,000/$10,000 limits it had chosen for its uninsured motorist coverage. We review de novo a district court's grant of summary judgment. Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 234 (4th Cir. 2007).

## II.

South Carolina requires automobile insurers to offer optional UIM up to the limits of liability coverage. S.C. Code Ann. § 38-77-160. Such an offer must be meaningful under standards set forth in S.C. Code Ann. § 38-77-350 or in the South Carolina Supreme Court's decision in State Farm Mutual Auto Insurance Co. v. Wannamaker, 354 S.E.2d 555, 556 (S.C. 1987). See McDowell v. Travelers Prop. & Cas. Co., 590 S.E.2d 514, 517 (S.C. Ct. App. 2003). If the insurer fails to make a meaningful offer of UIM, a court will reform the policy to include UIM up to the limits of liability coverage. Butler v. Unisun Ins. Co., 475 S.E.2d 758, 760 (S.C. 1996).

### A.

An insurer is entitled to a conclusive presumption that it made a meaningful offer of UIM if the insured has signed a form that uses a state-approved format and meets certain statutory requirements. S.C. Code Ann. § 38-77-350(B). Forms must (1)

5

briefly and concisely explain the nature of the coverage; (2) list available limits and additional premiums; (3) provide spaces to accept or reject coverage and to state the desired coverage limits; (4) provide a space for the insured to acknowledge the offer of optional coverage; and (5) provide contact information for any further questions the insured might have. S.C. Code Ann. § 38-77-350(A). The list of available limits must include the option of UIM equal to the limits of the insured's liability coverage. Butler, 475 S.E.2d at 761.

As a threshold matter, the Croft Estate contends that ORIC cannot benefit from the statutory presumption because Penske failed to return the 2002-2003 forms to ORIC within the statutory time limit. S.C. Code Ann. § 38-77-350(E) states that when an insured fails to return an executed offer form to the insurer within thirty days, the insurer shall add on UIM with the same policy limits as the insured's liability limits. On December 4, 2001, ORIC sent the 2002-2003 forms to Penske. Penske completed the forms on December 28, 2001, and returned them to its insurance broker, AON Risk Services, Inc. (AON). AON, however, failed to deliver the forms to ORIC until August 2002. The untimely return of the 2002-2003 forms thus prevents them from giving rise to the statutory presumption of a meaningful offer.

Although the Croft accident occurred during the period covered by the ineffective forms, we may look at earlier forms

6

submitted for the same policy to find a meaningful offer.  An insurer may rely on effective past offers of UIM when an insured's coverage continues.  <u>Ackerman v. Travelers Indem. Co.</u>, 456 S.E.2d 408, 411 (S.C. Ct. App. 1995) (citing S.C. Code Ann. § 38-77-350(C)).  ORIC may still benefit from the statutory presumption if it shows that prior forms signed by Penske made an effective offer of UIM.  Both the 2000-2001 and 2001-2002 forms used a state-approved format and were signed and returned within thirty days.  ORIC does not qualify for the presumption of a meaningful offer, however, because the forms do not unambiguously offer UIM up to the policy's liability limits.  The inclusion of the $1 million UIM option in the Table of Limits and in the explanation of coverage is negated by the statement that UIM is only "available at Limit(s) up to the same Limit(s) selected for Uninsured Motorists [coverage.]" J.A. 29, 33.  This statement indicated that Penske could not select UIM limits equal to its liability limits because it had opted for minimum uninsured motorist coverage.  South Carolina law requires insurers to offer UIM up to the policy's liability limits, regardless of the choice of uninsured motorist coverage.  <u>See</u> S.C. Code Ann. § 38-77-160.  ORIC's forms failed to satisfy this requirement because they misleadingly suggested that the insured could not choose any level of coverage that exceeded its uninsured motorist coverage.

7

For similar reasons, ORIC's offer was not meaningful under the <u>Wannamaker</u> test.  In the absence of a qualifying form, the insurer's offer will be deemed meaningful if the insurer shows that (1) its notification process was commercially reasonable; (2) it specified the limits of optional coverage; (3) it intelligibly advised the insured of the nature of the optional coverage; and (4) the insured was told that optional coverages were available for an additional premium.  <u>Wannamaker</u>, 354 S.E.2d at 556.  Both the written forms and the parties' oral communications about the coverage may be considered to determine whether a meaningful offer was made.  We agree with the district court that ORIC never made an unambiguous offer of UIM up to the policy's liability limits, either in writing or orally.  The forms contained a misleading statement that could have prevented an insured from opting for UIM in the desired amount because of its choice of a lower set of limits for uninsured motorist coverage.  There is no evidence that discussions between Penske and ORIC did anything to mitigate the effects of this misstatement.  George Frazier, a Penske representative in charge of the company's insurance matters, testified in deposition that he was never offered UIM coverage equal to the policy's $1 million liability limits.  When asked "[W]as a million dollars in underinsured coverage ever offered to Penske Trucking by Old Republic?", J.A. 257-58, Frazier replied,

"The answer is, no.  It was never offered."  J.A. 258.  Frazier explained that he "never told [ORIC] to offer it. . . .  And they followed my instructions."  J.A. 258.  He further testified, "I understand these policies, and I understand the limits that are being offered to me.  And I understand that I could buy a million dollars, if I wanted to.  And, if they offered it to me, I would send it back to them . . . ."  J.A. 259.  Penske's understanding and desires, however, do not detract from the admitted fact that the offer was never made.  Nothing in Frazier's testimony indicates that his understanding of the full range of UIM options came from ORIC, as Wannamaker requires, see 354 S.E.2d at 556.  Rather, he maintains throughout his testimony that ORIC never offered $1 million UIM limits.  Evidence of Frazier's sophisticated knowledge of typical insurance offerings and indications that Penske would not have purchased the coverage even if it had received an unambiguous offer are irrelevant.  Croft, 618 S.E.2d at 918.  Before looking at the insured's level of knowledge and understanding to determine the meaningfulness of an offer, we must first find that the insurer made an offer.  See id.  The gist of ORIC's misstatement was that UIM coverage up to the liability limits was unavailable to an insured opting for a lower amount of uninsured motorist coverage.  ORIC thus failed to make a meaningful offer of UIM to Penske, and the policy must be reformed to provide UIM up to the policy's liability limits.

C.

This conclusion is not changed by ORIC's meritless assertion that the district court failed to follow the commands of the Rules of Decision Act, 28 U.S.C. § 1652. The district court neither neglected to apply South Carolina law nor impermissibly generated its own federal rule to decide the case.

III.

Because ORIC failed to satisfy either the statutory requirements for form offers or the <u>Wannamaker</u> test, ORIC did not make a meaningful offer of UIM to Penske. The policy must be reformed to provide UIM coverage up to the policy's liability limits. The grant of summary judgment to the Croft Estate is therefore

<u>AFFIRMED</u>.